IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RONALD BROWN,

          Plaintiff,

v.                              CIVIL ACTION NO. 2:19-cv-00571

CORRECTIONAL OFFICER SKYLER SANTIAGO, et al.,

          Defendants.

**MEMORANDUM OPINION & ORDER**

    Before the court is Plaintiff Ronald Brown's ("Mr. Brown") Amended Complaint in which he brings claims for excessive force in violation of his Eighth Amendment rights, assault and battery and intentional infliction of emotional distress. [ECF No. 1, Ex. 2]. The Defendants have filed a Renewed Motion for Summary Judgment [ECF No. 27] incorporating and restating their prior Motion for Summary Judgment and Memorandum of Law [ECF Nos. 18 & 19]. Having reviewed the motion for summary judgment, Mr. Brown's response [ECF No. 28], the Defendants' reply [ECF No. 32], and the record evidence, I find that the use of force was not excessive and that the Defendants are entitled to the benefit of qualified immunity. For the reasons fully explained in the memorandum below, the motion for summary judgment is **GRANTED.**

I.    BACKGROUND

    This excessive force case was initiated on May 10, 2019. Mr. Brown filed a complaint in the Circuit Court of Kanawha County, West Virginia. [ECF No. 1, Ex.

1

1]. Mr. Brown brings three claims: state law assault and battery ("count I"), intentional infliction of emotional distress ("count II"); and a claim brought under 42 U.S.C. § 1983.[1]

The Defendants–all corrections officers at the Mount Olive Correctional Complex ("MOCC")–subsequently removed the complaint to this court. Plaintiff complains that while he was incarcerated at MOCC, the Defendants forcefully extracted him from an outdoor exercise cage on June 25, 2018. [ECF No. 1, Ex. 2]. Mr. Brown states that while he was in the exercise cage, MOCC corrections officers removed inmates from adjacent cages forcefully and with pepper spray. *Id.* Approximately 15 minutes after the other inmates were removed, the officers asked Mr. Brown to return to his cell. Mr. Brown at first refused, claiming that he feared being assaulted if he left the cage. [ECF No. 1, Ex. 2 at ¶16]. Mr. Brown states that Defendants ordered him to "prone out" for extraction and removal from the exercise cage but that he refused to do so because the floor of the cage was covered in urine. *Id.* at ¶13. Mr. Brown claims that he offered instead to be cuffed through the bars of the cage. *Id.* at ¶18. Plaintiff complains that Defendants then used a tactical team to remove him from the cell and accosted him "by using excessive force against him? . . . by, among other things, slamming plaintiff into the ground" and "hitting and kicking plaintiff." *Id.* at ¶13. Mr. Brown complains that as a result of this application of force, he suffered "bruising, lacerations, abrasions, a broken finger, a concussion and injury to his back." *Id.* Mr. Brown states that during the extraction, the Defendants took

---

[1] Plaintiff has withdrawn his claim for vicarious liability against the West Virginia Division of Corrections and Rehabilitation.

2

him to the ground of the cell (which he alleges was covered in urine) where they kicked and punched him and bent his finger back far enough to break it. *Id.* at ¶18. He alleges that the Defendants taunted him saying "we can kill you" while they were detaining and extracting him. *Id.* at ¶21. Mr. Brown complains that he was then removed to an area without video cameras and further beaten before Defendants escorted him to the medical unit for examination of his injuries. *Id.* at ¶19. As a result of his injuries, Mr. Brown was transported to Montgomery General Hospital for examination and diagnostics. *Id.* at ¶20.

The Defendants claim that Mr. Brown was being disorderly while the other inmates were being removed from their exercise cages; that he used verbally abusive and threatening language while refusing to comply with orders despite 15 minutes of attempts to use negotiation and dialogue to gain his compliance and to get him to "cuff up" or "prone out". [ECF No. 19 at 3]. Defendants state that this standoff lasted over an hour in total before an extraction team was finally sent into the recreation area.

Body cam footage shows the extraction team getting into formation and preparing to enter the yard. Defendant Captain Penick led a team comprised of Defendants Santiago, Wilson, Thomas, and Phillips plus two officers not named in this lawsuit—Donald Slack and Charles Legg (who was wearing the body camera)—into the yard. Upon reaching the cell occupied by Mr. Brown, Capt. Penick can be heard asking Mr. Brown "do you want to strip out and cuff up?" Mr. Brown replied "no." One of the officers at the front of the column appears to point out that Mr. Brown was holding a pen in his hands. As Capt. Penick unlocked the cell, Mr. Brown raised

3

his hands to show that they are empty and says that he has thrown the pen to the ground, indicating that he did not intend to use it as a weapon against the group of officers poised to forcibly extract him from the cell. The Defendants rushed into the cell as a group, wrestled Mr. Brown to the ground and applied hand cuffs and shackles. Mr. Brown was in obvious pain during this detainer and blood can be seen on his forehead as he is led out of the exercise cage.

The camera followed as Mr. Brown was escorted to the medical room. On the way, he was doubled over, but no obvious additional blows or beatings are discernible. In the medical room doorway, the camera lagged behind the action and Mr. Brown was next seen on the ground hollering and saying that he was sorry for disobeying orders. The Defendants lifted him into a chair for medical observation and at one point, Mr. Brown appears to slip in and out of consciousness.

## II.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for

admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

The Defendants move for summary judgment, arguing **(i)** that the applied use of force was not violative of Mr. Brown's Eighth Amendment rights because it was a good faith effort to restore order and safety; **(ii)** that Mr. Brown's assault and battery claims must therefore fail as a matter of law; **(iii)** that no deviations from MOCC policy occurred and that if one had occurred, such deviation is not *per se* a constitutional violation and; **(iv)** that the Defendants are entitled to the benefit of qualified immunity.

#### A. *Qualified Immunity and Eighth Amendment Claim*

Section 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his or her constitutional or federal rights. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, "immunity is a threshold issue which the court addresses before considering any of the defendants' proffered substantive bases for summary judgment." *Weigle v. Pifer*, 139 F. Supp. 3d

760, 768 (S.D. W. Va. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Thus, I must undertake a two-part inquiry: (1) viewing the facts in the light most favorable to Mr. Brown, the court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If the answer to either question is no, then the Defendants are entitled to qualified immunity. I will first examine the question of whether a constitutional violation has taken place in this case.

The Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners . . . where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *see also Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) ("The Supreme Court has extended the application of the Eighth Amendment's prohibition against 'cruel and unusual punishments' to the treatment of prisoners by prison officials."). A claim brought under the Eighth Amendment must contain both an objective and a subjective element. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To satisfy the objective element, an inmate must show that that the "deprivation suffered or injury inflicted on the inmate was sufficiently serious." *Id*. For excessive force claims, an

6

inmate does not have to show that the force was an "extreme deprivation" or "significant" pain or injury to establish the objective element, but must only show that more than a de minimis pain or injury occurred. *See Williams*, 77 F.3d at 761. The objective component is "contextual and responsive to contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

To satisfy the subjective element, an inmate must demonstrate that "the prison official . . . acted with 'wantonness in the infliction of pain.'" *Williams*, at 77 F.3d at 761 (quoting *Whitley*, 475 U.S. at 322). The Supreme Court has stated that the unnecessary infliction of pain includes inflictions of pain that are "totally without penal justification." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). "When prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cantrell v. Rubenstein*, No. 2:14-cv-17419, 2016 U.S. Dist. LEXIS 134737, 2016 WL 5723601, at *19 (S.D. W. Va. Aug. 23, 2016), *report and recommendation adopted*, No. 2:14-cv-17419, 2016 U.S. Dist. LEXIS 134135, 2016 WL 5660339, (quoting *Whitley*, 475 U.S. at 320–21).

In determining whether the use of force violates the Eighth Amendment, the Supreme Court has utilized the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

7

*Whitley*, 475 U.S. at 321. After examining the record evidence, I find that there is no genuine issue of material fact and that the Defendants were engaged in "a good faith effort to maintain or restore discipline." Taking the first *Whitley* factor, it is clear that there was a need for some degree of force. The parties do not dispute that Mr. Brown was disorderly and that he refused to comply with repeated requests to either "prone out" or "cuff up" after a lengthy period of attempts to win his cooperation. Taking as true (as I must in deciding this motion) Mr. Brown's allegation that the floor was covered in urine, this fact does not support Mr. Brown's position that his refusal to comply with orders was entirely because MOCC officers were ordering him to lie in urine. Mr. Brown also rebuffed offers to simply be handcuffed and led off the yard including a final, good faith effort at non-forceful resolution by Captain Penick. Mr. Brown essentially dared the Defendants to physically remove him from the exercise cage, leaving them with no choice but to do just that. While Mr. Brown's amended complaint states that he offered to "cuff up," the video evidence belies that point. Captain Penick can be heard asking Mr. Brown one last time if he was willing to come out and Mr. Brown refuses. *See video 6* [ECF No. 19, Ex. B]; Depo. of Brian Penick [ECF No 32, Ex. B].

As to the second factor, the relationship between the need for force and the amount of force used, I find that the video evidence demonstrates that the Defendants used the amount of force that was necessary to restrain and subdue Mr. Brown. Video 6 shows the extraction team quickly take Mr. Brown to the ground, apply restraints and lead him out. Mr. Brown did sustain injuries to his head, back and finger during this encounter. However, the extent of the injuries he received is not the primary

focus of the judicial inquiry. The infliction of pain—and even an injury in the course of a good faith security effort—is not necessarily indicative of a constitutional violation. The video evidence that I have reviewed does not show a beating or an application of force that was "repugnant to the conscience of mankind." *Oliver v. Powell*, 250 F. Supp. 2d 593, 603 (E.D. Va. Sept. 4, 2002) (quoting *Marshall v. Odom*, 156 F. Supp. 2d 525, 531 (D. Md. July 18, 2001)).

The next *Whitley* factor, the extent of the reasonably perceived threat to the officers, also weighs in Defendants' favor. The parties are in agreement that Mr. Brown was using profanity and threatening language to the guards who were trying to reconcile the situation without the use of force. *See* Brown Depo. at 35 [ECF No. 19, Ex. C]. It was not unreasonable for MOCC officers to believe that Mr. Brown posed a threat to order and safety.

Finally, the video clearly shows that Captain Penick gave Mr. Brown a final chance to leave the exercise cell without having to undergo a forcible removal. In deposition, Mr. Brown was asked, "Do you agree that Major Ward spent a significant amount of time trying to deescalate that situation?" Mr. Brown replied, "I know he was out there talking to us, yes." [ECF No. 28, Ex. C]. There is no genuine issue of fact then that the Defendants attempted to temper the situation without force. The final *Whitley* factor therefore (efforts made to temper) favors the Defendants.

Viewing the record in the most favorable light to Mr. Brown, I find that the Defendants' conduct was a good faith effort to maintain order and security and not an excessive use of force in violation of Mr. Brown's Eighth Amendment rights. The video evidence does not support the Plaintiff's version of the events. "When opposing

9

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott v. Harris*, 550 U.S. 372, 380, (2007). Mr. Brown has failed to present any evidence to overcome the Defendants' video evidence showing that the application of force was done in a good faith manner to restore discipline and not maliciously to cause harm.

Because there was no constitutional violation, the Defendants are entitled to qualified immunity. The Defendants' motion for summary judgment as to Count III is **GRANTED**.

### B. *State Law Claims*

Mr. Brown also brings state law claims for assault and battery (Count I) and intentional infliction of emotional distress (Count II), both of which arise out of the same set of facts as his excessive force claim brought pursuant to 42 U.S.C. § 1983.

Mr. Brown's claims of assault and battery and intentional infliction of emotional distress are matters of state tort law. *See Gray v. Bd. of Cty. Commrs. of Frederick Cty., Md.*, 551 F. App'x 666, 677 (4th. Cir 2014) (a constitutional claim of excess force and a state criminal charge or tort claim of assault and battery charge are based on distinct legal concepts and foundations). Under West Virginia law, the legal phrase "assault and battery" is used to refer to the tort of battery. The Restatement (Second) of Torts, § 13 (1965), sets out the elements of the tort of battery as follows: an actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the

person of the other directly or indirectly results. *See also*, *Smith v. Berlin*, no. 3:12-cv-07358, 2014 U.S. Dist. LEXIS 139725 (S. D. W. Va., Aug. 28, 2014) (quoting *Tolliver v. Kroger, Co.*, 498 S.E.2d 702, 710 (1997)) ("In order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person.").

In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Travis v. Alcon Labs., Inc.*, 202 W. Va. 369 (1998).

Having already found that there is no genuine issue of fact on the excessive force claim, I find that there is also no issue of fact on these state law claims. Because the Defendants did not engage in excessive force, their conduct was reasonable under the circumstances. Therefore, no reasonable jury could find that the Defendants acted with the intent to cause an offensive, harmful contact instead of with the intent to subdue an unruly inmate and to restore discipline and order. Nor was the effort to restore discipline and order "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." The Defendants' motion for summary judgment as to counts I and II is **GRANTED.**

### C. *Violation of Policy and Procedure*

In Count V of the Amended Complaint, Mr. Brown alleges that Defendant West Virginia Department of Corrections recklessly or negligently failed to follow its own procedures put in place to prevent retaliation against inmates who file complaints and lawsuits. [ECF No. 1, Ex. 2]. Defendants argue that there was no policy violation and that even if there were, such violation does not create an independent cause of action. Plaintiff did not respond to this argument in his response to the motion for summary judgment and appears to have dropped this count along with his supervisory liability claim. *See* Plaintiff's Memorandum of Fact and Law in Response to Defendants' Motion for Summary Judgment ECF No. 28 at 1 ("Mr. Brown has asserted claims against the defendants as follows: 1) Violation of 42 U.S.C. § 1983 for cruel and unusual punishment/excessive force . . . 2) Intentional infliction of emotional distress; and 3) Assault and battery"). Defendants' discussion of MOCC policy directives is contained within their argument related to excessive force. I take it therefore that Mr. Brown has withdrawn Count V.

### IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment [ECF 18] is **GRANTED.** The complaint [ECF No. 1, Ex. 2] is **DISMISSED** and the matter ordered to be **REMOVED from the docket.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 5, 2021

12

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

13